FREEMAN, J.,
delivered tbe opinion of the Court.
The bill in this case is -filed for the purpose of having a judgment at law enjoined, obtained at January Term, 1867, of the Circuit Court for Shelby county, 'against complainant, Robert I. Chester, as maker, and ¥m. B. Chester as indorser, of a note for $4,133.83, dated 15th April, 1860, and to have an investigation of the matters between complainants and defendants in a court of chancery.
The first ground for relief, as stated in complainant’s bill, which we notice, is the excuse given for not making his defense at law. It is in substance, that when suit was brought in the Circuit Court against the parties, complainant Robert I. Chester employed an attorney to make his defense to said suit, but before the trial of said cause, the said attorney quit attending the court, and engaged other attorneys to attend to the case, and said attorneys, without a correct knowledge of complainant’s defense, and without the knowledge of complainant, made an agreement in regard to the suit, and suffered judgment against the parties. The *642 bill charges, that complainants knew nothing of said agreement until after the rendition of said judgment, and too late to have it corrected.
A court of equity has jurisdiction, unquestionably, to enjoin a judgment at law, but after a trial of the case in such court, there are well settled rules that define and limit the action of courts of equity, within which a party must bring himself, before he is entitled to ask such relief. The rule is thus laid down by this court, and sustained by a uniform current of authorities in this State, and our sister States, as well as in the Court of Chancery in England, that “a party will not be aided by a court of chancery, after a trial at law, unless he can impeach the justice of the verdict, on grounds of which he could not avail himself at law, or of which he was prevented from availing himself by fraud or accident, or the act of the opposite party, unmixed with negligence on his piart:” See 3 Yer., 127; Rice v. R. R. Bank, 7 Hum., 42. And a remedy or defense lost by default of the party himself, will never be restored by a court of chancery, unless it has been so lost by the fraud or undue advantage taken by the other party: 6 Hum., 248. But a court of equity cannot grant relief against a verdict obtained against a party by his own negligence, where his defense was not prevented by fraud or fault of the other party.
It is not enough that the circumstances constituting the obstacle, were beyond the control of the party at the time; it must be shown that no rea *643 sonable degree of care and diligence could have prevented their occurrence. The party would not, therefore, be entitled to relief, unless he has used every reasonable effort to ascertain the nature and bearing of his defense before the trial, and has taken the proper steps to make his defense effectual at the time the case is tried: See 3 Lead. Cases in Eq., 193, and cases cited. The principle that runs through all the modern cases, and is now the settled doctrine of a court of equity is, that when a party is sued at law, he has notice of the plaintiff’s purpose to obtain a judgment against him on the claim, or demand, the subject of the litigation, and if he fails, with the active diligence of a prudent man, thus notified of the purpose of his opponent, to take all the necessary steps demanded, to make good whatever defense • he may have against such claim, he cannot ask the aid of another court to relieve him from the consequences of his neglect: 3 Lead. Cases in Eq., 195..
Does the complainant bring himself within these stringent but well settled, and as we hold, sound rules, for the action of a court of equity? We are bound to say he has not done so.
He says he had employed an attorney, but that said attorney had ceased to attend the court, and procured other attorneys to take charge of the case, without the knowledge of complainant; and said attorneys, without a correct knowledge of complainant’s defenses, and without his knowledge, made an agreement in regard to said suit, and suffered judg *644 ment to go against Mm for tbe amount complained of. He does not even allege tbat be bad furnished bis attorney with tbe evidences or grounds of bis defense, or tbat pleas bad been put in, presenting the grounds on which bis defense rested. In a case so complicated as tbe one presented in this bill, and involving' tbe amount shown in this judgment, ordinary diligence even, would have required tbat tbe plaintiff should have been present at the court, at any rate until tbe issues were made up in the case; and it was then tbe duty of tbe party to have furnished bis attorney with such evidences as were in bis possession to sustain bis defense, and to have been diligent in tbe procurement of such other evidence as was in bis power, and tbe nature of tbe case required.
“We can see no such diligence in this case; on tbe contrary, we can see, taking tbe allegations of complainant’s bill as all true, as they stand admitted by tbe demurrer, tbat there was evidently a total neglect of bis case, except simply tbe employment of an attorney to defend tbe ■ case, tbe complainant, as far as tbe bill shows, giving no further attention to bis case, nor attending tbe court to see what might be demanded of him by way of making good bis defense. Ve bold tbat, if complainants have presented no other ground on which they can ask tbe intervention of a court of equity than tbe fact tbat tbe judgment has been rendered against him, under tbe circumstances as alleged, be must be repelled, because of bis own *645 laches and neglect in maintaining bis alleged rights in a court which had jurisdiction over his person by service of process, by which he had notice that this judgment was sought against him on the very note now alleged to be a wrongful, unjust and iniquitous claim.
One branch of the rule which we have cited above, however, is, that a party will not be aided by a court of equity, after a trial at law, unless he can impeach the correctness of the judgment on grounds of which he could not avail himself at law. In other words, although he may have been negligent in making his - defense at law, still, if the defenses to the claim of the party against him are of such a character that he could not have availed himself of them in a court of law, however diligent, or where from the facts alleged in the bill, the court can see that his defense at law would have been so embarrassed, or complicated, as that if presented in an original bill for relief, and demurred to, the court of equity would have jurisdiction because of the embarrassment of the remedy at law, or the complication of the account required in making out said defense, and the difficulty of presenting the same before a jury; then, notwithstanding a trial at law, a court of equity will take jurisdiction, and give the party the benefit of its modes of investigation, better adapted to meet the exigences of such a case, and to do complete justice to the parties. This is done not to enable the party to make his legal *646 defense, blit to enable Mm to set up and establish independent equities not available at law, and is not in contravention of, but in accordance with the rule, now almost an axiom, as laid down by Chief Justice Marshall, in Smith v. McIver, 9 Wheat., Curtis’ Ed., U. S. R., 172, that in cases of concurrent jurisdiction, the tribunal which first obtains possession of the suit must give the remedy, and that a question decided at law, or we add, that might have been decided by proper diligence in that litigation, cannot be reviewed in court of equity without the suggestion of some equitable circumstance of which the party could not avail himself at law. See 3 Lead. Cases in Eq., 187-189, and cases there cited.
Applying these well established principles to the facts alleged in this case, let us see if the party has presented such a state of facts as, independent of his negligence in making his defense at law, entitles him to be relieved in a court of equity, admitting the facts to be as stated, as is done by the demurrer.
"We notice first the allegation that the party had shipped to his commission merchants, the defendants, several rafts of timber, which had been sold, and proceeds used, and not applied to his credit as ought to have been done. This furnishes no ground of relief, as it was equally available at law, and no embarrassment in the remedy to prevent the party making it good on the trial, had he been diligent in presenting his defense as *647 tlie law required liirn to bq: 3 Lead. Cases in Eq., 185.
Next it is insisted, that there was a partial failure of the consideration for said note, by failure of Apperson & Co. to make future advances, for which it is alleged to have been given, except, perhaps, fifteen hundred or two thousand dollars.
It is well settled this is no ground on which to come into a court of equity after a trial at law, as this could have been made available to him as a defense in a court of law, as well as in a court of equity, and like the matter of set-off, there was no embarrassment in making good the defense, if proper diligence had been used in preparation of his ease before the legal tribunal.
The next question presented, and the one of most difficulty, is the question of usury, as made out in the facts of the case as alleged in the bill.
The substance of the allegations of the bill on this subject is, that E. M. Apperson & Co. were, from and including the year 1857 to the end of the business year 1859, the commission merchants of complainant, Hubert I., in selling his cotton, wheat, etc., produce of the farm of the said Chester, and that the said firm furnished supplies of groceries, and probably’ other articles in their line to the complainant Chester. That their habit of business was to advance to Chester money, and take his note for the same, with one of his sons as indorser, at four months, and charge him for commissions on said money so advanced, at the *648 rate of two and a balf per cent., and also interest for the time the note had to run. These notes were renewed when they fell due, at four months or sixty days, from time to time, so as to fall due at the time Chester’s produce would get into market, and then, as we assume, be paid by the sale of the produce shipped to Apperson & Co.
Complainants allege that said notes, so renewed, would include interest, and an additional two and a half per cent, for advancing, which was simply a renewal of the note given for the original advance, including a second commission of two and a half per cent, for the original advance, all of which, as he alleges, he is advised and believes, and so charges to be usurious and unjust. The bill then charges, that at the close of the business year the said Apperson & Co. would settle with complainant, charging him with the amount of the note given as above stated, and with supplies and groceries furnished, and credit him with proceeds of sale of produce, and then make advances in money for the next year, when such advances were desired by Chester.
The bill charges, that on such advances, Chester, at the end of the year, gave his note for the amount of money to be advanced, as. before stated, which would pass through the same process of renewal and charges above stated, as often as might be necessary, to carry it on till the maturity of the next crop; in the meantime, as the bill says, charging complainant with two and a half per *649 cent, commissions for tbe advancement and interest, and an additional two and a balf per cent, commission and interest for tbe time tbe note bad to run, at eacb renewal of said. note,. wbicb, in tbe course of tbe business year, would make two or three separate charges for tbe same advancement of money. Tbe bill charges, that this course of business continued till tbe end of tbe business year 1859, when be for tbe first time learned that E. M. Apperson & Co. were overcharging him, and double charging him, and failing to give him bis proper credits, when be determined to close bis business connection with tbe firm, and did so.
It seems from tbe bill that Apperson & Co., bearing of this, sent their clerk to Madison county, tbe residence of Chester, to try and adjust tbe matter, and get a continuance of Chester’s business. Tbe bill alleges that said clerk then gave Chester a paper writing, ■■ binding said firm to correct all overcharges, double charges, and errors, and to give him bis proper credits, and to make him a further advance of money, with a view to get him to continue bis business. We may say, here, that we are at some loss to account for tbe fact that such a paper should not have been made an exhibit to tbe bill, so that tbe court could see its terms and provisions. However, it is then alleged that tbe note sued on in this case, for f>4,133.83 was executed, “for tbe purpose of procuring an advancement of money from said firm, and to close a balance of account claimed to be due tbe firm. Said *650 business was not, however, renewed, and tbe bill charges that the errors and wrongful charges in the account were never corrected, nor -was a cent of the contemplated advances ever made that was to be covered by said note. He further states, that part of the time while he dealt with said firm he executed two or three notes for different advances made in the course of the year, which were renewed as above stated.
The question presented on this statement of facts; which present, to say the least of them, evidence of a careless oversight, and neglect of the ordinary attention given by men of average business capacity to matters involving as much as these transactions involve; is as to whether they present a case such as, on independent grounds of equity, a court of law could not properly take cognizance of, or afford, adequately, a remedy for, so as to entitle the party to call in the aid of a Court of Chancery for his relief.
The facts present a case of usury beyond all question, and of continuous usurious transactions running through the whole period of the dealings between the parties; but it is not every case of usury where a court of equity will give relief after a trial at law; still there is a class of cases, well defined, whore such relief may be given.
The court held correctly, we think, in the case of Lindsley v. James, 3 Col., 482, 483, that the act of 1844, which provided, in substance, that in usury cases courts of equity shall entertain *651 jurisdiction1, and give relief, notwithstanding there was a trial at law,, and defendant failed to make his defense, or, having made it, failed for want of proof, was not carried into the Code, and that the law stands now as it did before the passage of said act.
The general rule is, that “where the defendant -at law failed to make his defense of usury, and was not prevented by fraud or the fault of the other party, nor by accident, unmixed with negligence on his part, a court of chancery will not take jurisdiction to afford relief — and in such case, the question whether a court of chancery would have had original jurisdiction or not, can make no difference:” McKoin & Wilkinson v. Cooley, 3 Hum., 559. And it is also held in this case, that the act of 1835, c. 50, ss 4 and 5, N. & C., 407, while it enlarges the powers of a court of law over the subject of usury, leaves the jurisdiction of a court of chancery where it was before: Ibid, 560.
The court, however, in the above case, adopted the language of the case of Buchanan v. Nolen, 3 Hum., 63, and say, “ we do not say that there may not arise cases where the principle of relief in a court of chancery, after a trial at law, may be applied, especially where usury is the subject of inquiry. An oppressed debtor, in the hands of an artful and heartless usurer, might be induced so to change securities, adding usurious interest, and for a long course of time repeating the process, as to make it difficult for a jury, in the mode of trial before *652 them, to detect the contrivance, and separate the usury from the sum really due;” and in such cases, “relief ought to be obtained in equity, although there had been a trial at law:” Frierson v. Moody, 3 Hum., 560, 561.
We think under these rules the complainant is entitled to come into a court of equity to have investigated the matters of usury alleged with reference to the sum of two thousand dollars, about that amount being, (as we understand the rather obscure allegations of the bill,) a balance of the account remaining unadjusted at the time of giving the note — which is charged to have been made up mainly of overcharges for advancements, in the manner indicated in the bill.
From the allegations of the bill, it would appear that there had been for the years 1857, 1858 and 1859, repeated renewals each year of the paper given for the sums advanced, or to cover such sums as might be advanced, amounting in all to perhaps as many as nine renewals, or perhaps more, and on each renewal there seems to be alleged, a charge of commissions on the renewed note, as so much money advanced, and as we infer from the bill, the commissions that had already accrued, was probably included in the renewal notes. We think, under the principles of the cases cited, this case presents such complications, and such difficulties to investigation before a jury, that to say the least of it, the party would find his remedy, by way of defense on this score, much embarrassed before a *653 jury, and that sucb an account as may be bad in a court of equity, will furnish a much more adequate and complete means of adjusting the matters between tbe parties^ than can be furnished in a court of law.
"We confine this relief, however, to the matter herein indicated, of the sum of two thousand dollars, which alone appears from the allegations of the bill to be tainted with the usurious charges.
It is insisted, however, as another ground of demurrer, that the complainant does not offer to pay or tender the amount admitted to be due, when filing his bill, and therefore the bill should have been dismissed.
That such is the English rule, is shown by numerous authorities. See Mason v. Gardner, 4 Brown Ch. R., 436; Scott v. Nesbitt, 2 Brown Ch. R., 649, note. The two cases cited by defendant’s counsel from 1 J. C. B., 367, and 5 J. C. R., 143, do not precisely support the doctrine contended for, as the first was a case on motion simply for an injunction, which was denied, unless the party should pay or offer to pay the amount actually due, and in the other an account was ordered to ascertain the amount of the usury in the transaction, and the same allowed. However, in both cases the rule seems to have been assumed to be as stated.
Be this as it may, we think the proper rule of practice in our State is, that the chancellor or judge shall not grant an injunction, except as to the amount of usury, stated to be in the judgment, *654 and allow the execution to be enforced and collected for the balance. This leaves the plaintiff in the judgment, as to the amount not contested for usury, precisely in the condition in which he was or would be, before the filing of the bill, and enables the defendant to contest, in a proper case, only that which is shown to be unjust and illegal — upon giving security for the ultimate payment of the debt, in the event he fails to make good the allegations of his bill.
"Where the injunction has been improvidently granted for more than the amount of usury, the party can always be relieved by moving to dissolve or modify the injunction at chambers, either on the statements of the bill, or on filing his answer, so that no great inconvenience can arise from the adoption of this practice.
By our practice, “the injunction bond is taken in lieu of the deposit of the money with the master, as is the practice in England, and it is made the duty of the clerk, upon dissolution of the injunction, to enter up judgment on the bond against the principal debtor and his securities on the bond:” 3 Yer., 484.
In this case, however, as to the sum of about two thousand dollars, while it would at first glance appear from reading the bill that it was admitted to be due, yet the complainant goes on to allege that “a large portion of that amount was made up of usury, over or false charges, and omissions to give proper credits.” So that in fact we can *655 not see, from tbe bill, that any precise sum is due, or what amount. It would have been more correct if complainant bad stated tbe actual amount due, but under all tbe facts of tbis case we do not tbink tbe bill should be dismissed for such •defect, as tbe defendant can file bis answer, and if be can deny tbe allegations of tbe bill, can dissolve tbe injunction, and have bis execution against complainant and bis sureties on tbe injunction bond for tbe sum enjoined.
TJpon tbe whole case we bold that while tbe party has barely brought himself within tbe established rule of a court of equity as to the usury and overcharges alleged in reference to tbe two thousand dollars, still, that under tbe circumstances, be ought to be allowed to investigate these matters in a court of chancery as’ to- tbe usury and overcharges alone.
We therefore reverse and modify tbe decree of tbe Chancellor by dismissing tbe bill, and dissolving tbe injunction as to all of said judgment, except tbe said item of two thousand dollars, and as to that allow that tbe bill shall be retained for an answer, on tbe question of tbe amount of usury in said item, and overcharges, but no further. Tbe case will be remanded, to be proceeded in as to tbis matter, and a decree entered here in accordance with tbis opinion.
Tbe costs of tbis court will be divided, tbe costs below to abide- tbe decision of tbe Chancellor on final bearing of tbe case.